**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR - 6 2026

JEFFREY P. COLWELL
CLERK

___Adamson, Amy A. DOC. #152343    (a.k.a. Anthony Adonis Adamson)_____
, Plaintiff

v.                                                                    **Jury Trial requested:**
                                                                      **(please check one)**
                                                                      __X__ Yes ____ No

__Colorado Dept. of Corrections (CDOC) and et al.,____

_Andre (Moses) Stancil (Executive Director of CDOC),_

Thomas Werlich, (former warden of LVCF), Defendant(s).

(Please See Attatched Pages)

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint** |

## Parties

  Adamson, Amy A. DOC. #152343   (a.k.a. Anthony Adonis Adamson), Plaintiff pro-se

v.

Colorado Dept. of Corrections (CDOC) and,

Moses (Andre) Stancil (Executive Director of CDOC),

Thomas Werlich, (former warden of LVCF),

Sam Spangler, (assistant warden of LVCF),

 Major Tamara Gold, (LVCF Housing/Security),

Wayne Salbato, (LVCF shift commander),

Sarah Cordova, (LVCF Housing captain),

 Captain Miramontez, (LVCF PREA coordinator),

Lt. Felicity Ziggarelli, (LVCF Housing supervisor),

Lt. Jason Santistevan, (LVCF Housing supervisor),

 Lt. Murphy, (former LVCF intelligence supervisor),

Lt.  Ortiz, (LVCF Shift commander),

 Lt. Trina Dowd, (LVCF canine supervisor),

 Lt. Coen, (LVCF mental health supervisor),

 Lt.? Racine, (LVCF case manager),

 C/O ? Floyd, ( LVCF housing officer),

C/O Edumenia Alfaro, (LVCF housing officer),

Sarah Berger, (LVCF HSA),

Tameika Pillsbury, (LVCF medical provider),

Mya Taylor, (LVCF medical nurse),

 Andrew Sanville, (Grievance Coordinator),

 John Bradburn, (Office of Inspector General Investigator)

l-A

## A.   PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Adamson, Amy A. #152343 – DWCF/P.O. Box.392005 Denver, Co 80239
   (Name, prisoner identification number, and complete mailing address)

Anthony Adonis Adamson
   (Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____   Pretrial detainee
____   Civilly committed detainee
____   Immigration detainee
_X__   Convicted and sentenced state prisoner
____   Convicted and sentenced federal prisoner
____   Other: (*Please explain*) _____

## B.   DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   Andre (Moses) Stancil, (current) Executive Director of the CDOC.
         (Name, job title, and complete mailing address)

         1250 Academy Park Loop Colorado Springs, Colorado 80910

         At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

         This defendant is acting under color of state law because he is and was the director of the CDOC where plaintiff is still incarcerated and the abuses of his civil rights were happening.

         Defendant 1 is being sued in his/her _X__ individual and/or _X__ official capacity.

Defendant 2:   Thomas Werlich, Warden of La Vista Correctional Facility._____

2

## B. DEFENDANT(S) INFORMATION contd.

Def. #3) Sam Spangler, Assistant Warden of LVCF.

1401 west 17th street Pueblo, Colorado 81003.

This Defendant is acting under color of state law because he was/is the current assistant warden where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Def. #4) Major Tamara Gold, LVCF Housing/Security supervisor.

1401 west 17th street Pueblo, Colorado 81003.

This Defendant is acting under color of state law because she was/is the current Housing and Security Supervisor where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Def. #5.) Captain Wayne Salbato, LVCF Shift Commander.

1401 west 17th street Pueblo, Colorado 81003.

This Defendant is acting under color of state law because he was/is the current Shift Commander where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #6.) Captain Sarah Cordova, LVCF Housing Supervisor.

1401 west. 17th street Pueblo, Colorado 81003.

This Defendant is acting under color of state law because she was/is the current Housing Captain and Shift Commander where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #7.) Captain Miramontez, LVCF PREA Coordinator.

1401 west 17th street Pueblo, Colorado 81003.

This Defendant is acting under color of state law because she was/is the current PREA Coordinator where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

2-A

## B. DEFENDANT(S) INFORMATION contd.

Def. #8.) Lt. Felicity Ziggeralli, LVCF Housing Supervisor.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the LVCF Security Sergeant and promoted to Housing Lieutenant for LVCF and eventually transferred to Y.O.S. Housing Lieutenant but prior to transfer she was working at LVCF where plaintiff was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #9.) Lt. Jason Santisteven, LVCF Housing Supervisor.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because he was/is the current LVCF Housing supervisor where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Def. #10.) Lt. Darrin Murphy, LVCF Intelligence Officer.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because he was the LVCF Intelligence Officer where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #11.) Lt. Ortiz, LVCF Shift Commander.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because he was/is the current LVCF Shift Commander where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Def. #12.) Lt. Trina Dowd, LVCF Canine Supervisor.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the LVCF Canine Supervisor

2-B

## B. DEFENDANT(S) INFORMATION contd.

where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #13.) Lt. Coen, LVCF Mental Health Supervisor.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was/is the current LVCF Mental Health where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Def. #14.) Lt. Racine, LVCF Case Manager.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the LVCF Case Manager where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #15.) C/O Floyd, LVCF Housing Officer.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because he was the LVCF Housing Officer Unit 5 where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #16.) C/O Edumenia Alfaro, LVCF Housing Officer.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the LVCF Housing Officer Unit 5 where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #17.) Sarah Berger, H.S.A. of Medical for LVCF

2-C

## B. DEFENDANT(S) INFORMATION contd.

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the HSA of the LVCF medical team where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #18.) Tameika Pillsbury, Medical Provider for LVCF

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the medical provider of the LVCF medical team where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #19.) Mya Taylor, medical nurse of LVCF

1401 west 17th street Pueblo, Colorado 81003

This Defendant is acting under color of state law because she was the medical provider of the LVCF medical team where plaintiff (a transgender man) was housed amongst all female prison population and was one of the staff members who was personally involved with the re-occurring abuse, neglect, retaliation, and discrimination.

Def. #20.) John Bradburn, (OIG) Office of the Inspector General

1250 Academy Park Loop Colorado Springs, Colorado 80910

This Defendant is acting under color of state law because he was the appointed investigator for LVCF where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Defendant #1- is being sued in their **OFFICIAL CAPACITY ONLY;**

Defendant #2-20- are being sued in both of their **INDIVIDUAL&OFFICIAL CAPACITIES.**

All defendants were "Acting under color of state law" at the time the claim(s) in plaintiff's complaint arose.

2-D

(Name, job title, and complete mailing address)

1401 west 17th street Pueblo, Colorado 81003

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ___ No (*check one*).  Briefly explain:

This defendant was acting under color of state law because he was the warden of LVCF where plaintiff (a transgender man) was housed amongst all female prison population and was personally informed by plaintiff of re-occurring abuse, neglect, retaliation, and discrimination.

Defendant 2 is being sued in his/her __X__ individual and/or __X__ official capacity.

Defendant 3:    (See previous page, 2-A)
                (Name, job title, and complete mailing address)

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ___ No (*check one*).  Briefly explain:

Defendant 3 is being sued in his/her __X__ individual and/or __X__ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

X       State/Local Official (42 U.S.C. § 1983)

___     Federal Official

        As to the federal official, are you seeking:

        ___ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

        ___ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

_X__    Other: (*please identify*) 28 U.S.C. 1391(b) (2) Colorado is where events occurred and conditions of confinement exist.

## D.    STATEMENT OF CLAIM(S)

3

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  Violation of 8th U.S. Const. Amendment's prohibition against the infliction of "Cruel and Unusual Punishment."

Claim one is asserted against these Defendant(s):  Prison officials are responsible for "the unnecessary and wanton infliction of pain". The 8th Amend. Embodies "broad and idealistic" concepts of dignity, civilized standards, humanity, and decency. Against which we evaluate penal measures. The use of force by sexual abuse and being deliberately and maliciously placed around that specific staff member before and after the abuse occurred by said defendant(s).

Supporting facts: The U.S. Supreme court held that prison officials cannot be deliberately indifferent to the sexual abuse of a transgender prisoner. According to Greene v. Brown, 361 F.3d 290, 293-95 (6th Cir.2004). Defendant(s) knew and deliberately disregarded substantial risk of harm to plaintiff.

**(Statement of claim(s) continued on following pages)**

4

## D. Statement of claim(s)—Claim one cont.

1. The 8th amendment doctrine recognizes 2 general categories of claims: use of force, which governed by a "purpose" standard with liability turning on whether prison official acted "maliciously and sadistically for the purpose of causing harm" and Non-force, which are governed by a "deliberate indifference" standard which occurs when defendant knows of a serious risk of harm and disregards it. From approximately 2023-2024 all said defendants fall into one or another of these 2 categories. I repeatedly reported to staff and other inmates on an almost daily basis with no help, instead I would receive aggressive retaliation for making those reports. Especially by housing Captain Sarah Cordova. She stated on multiple occasions she "washed her hands" of me and she would make sure I knew what it felt like to have her staff do the same. I would be deliberately placed in cells that were unsafe and around the C/O who I previously made reports on. I would ask every staff member to "chron" my reports and no one would ever chron the allegations and reports I made. LVCF staff in any turn would absolutely violate both the general categories of claims.

2. Approx. July 2024 C/O Floyd followed me into the staff break room where I had to put the chemicals away for the unit and he started to sexually assault me by grabbing me from behind and pushing himself up against the back side of me with his penis fully erect and asking me how "a real dick felt" and "my pussy was so tight he would hurt me" See Ullery v. Raemisch, 2019 U.S. Dist.

3. Approximately March/April of 2024 C/O Floyd started making more aggressive comments towards me like calling me his "boo" and stating that he wanted to "turn me out". I reported it to Captain Cordova and instead of separating me she stated the reports were considered "hearsay".

4. On 3-8-24 Captain Cordova said that the reports of C/O Floyd making lewd comments and sexually harassing me wasn't true and its considered "hearsay" and she was going to permanently assign him to my living unit so I had to "face the man I lied on and tried to sabotage his job". I told her if she did that I would be at risk of rape and retaliation by this staff member. She violated the PREA regulation 100-40 and my 8th amend. Right to be free from sexual discrimination and

4-A

## D. Statement of claim(s)—Claim one cont.

harassment.

5. On 9-3-24 I placed several grievances on C/O Floyd since it was an ongoing issue and I didn't want the sexual assault to turn into a rape situation. C/O Floyd's sexual nature towards me and L.V.C.F. staff's disregard to my reports. My grievances were never scanned into the system or responded to. When I asked about the status I was told "they got lost" by my case manager Lt. Racine. I refiled multiple times with no avail. I have original copies of the grievances filed due to them being "passed around" to random mailboxes for the staff. They were read and gossiped about behind the sexual abuse.

6. On 9-17-24 Sgt. Barela from the LVCF laundry Dept. was advised by her superior officer to have me paged down to laundry and give back all grievances that were being passed around. The staff stated they knew this was against the law and wanted nothing to do with this. Since the grievances were getting "lost" I would report it through the PREA Hotline as well and on a daily basis in the month of September of 2024 I called the PREA Hotline and had my family from outside email the Executive Director Moses Andre Stancil until I was placed into protective custody and transferred back to DWCF.

7. My repeated "views and sufficiently serious concerns regarding my personal "safety" have consistently been disregarded, or totally ignored as evidenced by the denials of every grievance filed on the subject of sexual harassment and personal safety, as well as CDOC and LVCF administration's failure to protect me from not just potential harm but the sexual assault I was subjected to by their own staff. I reported a staff member saying sexually explicit statements to me to not only Captain Miramontez the PREA coordinator but the housing Captain Sarah Cordova and I was disregarded and intentionally put around him and approximately 4 months later was sexually assaulted by C/O Floyd. After reporting the assault, I was not only ignored, but retaliated on by programs, housing, and every other aspect of my life in that facility. To this day that staff member is still working in that facility with numerous sexual assault allegations on him by both staff and

4-B

## D. Statement of claim(s)—Claim one cont.

inmates. Approx. December of 2025, another investigation was opened on C/O Floyd by the OIG office and I was re-interviewed by Inspector Celman in my case manager's office at DWCF. Even to this day the sexual abuse grievances have still yet to be answered, even though through other grievances it clearly states that I was sexually assaulted. This is clear violation of not just my 8th Amend. Rights but also my 1st Amend. Rights of Freedom of Speech without the fear of retaliation. (Jacklovich v. Simmons, 392 F.3d 420, 426 10th Cir.2004).

8. On several occasions C/O Alfaro would get on the P.A. intercom system and announce that I was the only transgender in the unit so I had special privileges and if the other inmates had issues with this to either go to my cell in Lower North 125 and confront me about my special privileges or go to medical and get on "T" like I did so they could have the same special privileges as well. C/O Alfaro made my daily living situation dangerous and unsafe and she stated that she "had Floyd's back". That in turn brought the bullying, ostracizing, harassment, and discrimination against me from other inmates. When I would report C/O Alfaro to Lt. Ziggerelli, Lt. Ortiz, or Cpt. Cordova, I was again told to grow "tougher skin" and "I want to be a man so bad act like it then and suck it up" they would laugh and say "grieve it like you do everything else."

9. Administrative Regulation (A.R.) #700-14- states that a "transgender offender's own views with respect to their own safety will be given serious consideration. A transgender offender can notify living unit staff of **any** safety issues verbally or in writing." Every time I mentioned this A.R. Lt. Ziggerelli or Cpt. Cordova would state, "There's loop-holes" to this A.R. and that LVCF doesn't believe in this A.R. at all and will never adhere to its content with comments such as, "look at you, why would a male want you?"& "you're lying just to gain attention."

10. Approx. August of 2024, Cpt. Cordova told unit staff to move me to another cell in the same living unit and to house me with an offender who falsely claimed PREA on me the year prior. She also advised unit staff she was having an educational staff member assist with the move and provoke an emotional response out of me to claim she "felt" threatened by my "manly demeanor".

4-C

## **D. Statement of claim(s)—Claim one cont.**

So I can be placed in segregation and she would have the justification to remove me from my Trinidad State courses because, 1- she refuses to have a "TG offender" represent her facility. & 2- if I wanted to falsely report her staff then she wanted me to "feel her wrath and hammer every moment of my day."

**Issue 2:** Violation of the 8th U.S. Const. Amend. Prohibition against the infliction of "cruel and Unusual punishment". The 8th Amend. Reaffirms the duty of the government to respect the dignity of all persons. People incarcerated after conviction make claims under this provision to challenge many aspects of their conditions of confinement: failure to protect them from violence from other incarcerated people. Defendant(s) willful disregard for the "substantial risk" of injury (harm) to plaintiff before, during, and after repeated reports of aggressive sexual harassment were filed.

**Supporting Facts:** According to Farmer v. Brennan, 511 U.S. 825 (1994), the 7th circuit court of appeals held, that, **"prison officials will not be free to ignore obvious dangers to inmates.** Whether the officials had the **requisite knowledge** is a question of fact subject to demonstration in the usual ways and a fact finder may conclude that the official knew of a substantial **risk** (of harm) from the very fact that it was obvious."

1. The 8th Amend. Guarantees people. Including (all) prison inmates, regardless of ethnicity, religious affiliation, or gender identification the "right" not to have "cruel and unusual punishment" inflicted upon them. This protection, which is enforced against the states and their agencies through the 14th Amend. Guarantees incarcerated persons the right to humane conditions of confinement. Starting approximately in 2023. Starting my grievance process Approx. January of 2024 on Captain Wayne Salbato for lewd comments, code of conduct, discrimination, retaliation, and sexual harassment. Statements such as "faggot" "boy/girl" "grow my hair out" and "act like a girl" on a consistent basis. According to Bivens v. Blaike, 2022 U.S. Dist. I shouldn't have to be forced or even introduced to the lewd comments made by both staff and inmates towards me.

4-D

## D. Statement of claim(s)—Claim one cont.

2. Based on The Civil Rights Act of 1964, the Supreme Court ruled that employment non-discrimination laws protect transgender people from being unfairly fired, not hired, or discriminated against while being employed. Approx. 12-21-23, I was wrongfully terminated from my I.C.C. Canine Handler position due to retaliation on the grievance filed on Cpt. Salbato for sexual harassment and code of conduct. Trina Dowd's response was in agreement to his with the added statement of, "you're in a women's facility" "stop with all this boy behavior" and she threatened to terminate me as her handler if I filed any grievances against staff for any reason.

3. According to Matzker v. Herr 748 F.2d 1142, 7th Cir. (1984) quoting Martin 742 F.2d 474; "knowingly exposing an inmate or acting reckless disregard of his/her right to be free from sexual assaults by fellow inmates shocks modern sensibilities and serve no legitimate penological purpose." A prisoner need not wait until an assault has occurred before obtaining injunctive relief. (Id at 845) Prison officials must take reasonable measures to protect prisoners from assault by other incarcerated people, including sexual assault.

4. Approximately January 2024, inmate Nicole Broyles-Thomas #198479 and Debra Riddle #189872 was housed in my cell (unit 5 LN 125) and the lewd, derogatory statements made about my sexual orientation began. On 2-13-24 Broyles-Thomas started throwing balled up socks, paper, and combs at me. 2-14-24 thru 3-7-24 both offenders would call me derogatory names such as, "faggot""tranny""queer",etc. Threatening to cut my cords on all my electronics, call the PREA Hotline and falsely accuse me of raping them and I reported this to staff on **every** occasion above

even multiple times a day. Asking to be removed and when denied I would ask staff specifically C/O Alfaro, C/O Floyd, Lt.Ziggerelli, Lt.Ortiz, Lt. Santistevan, and Cpt. Cordova. All said staff would keep telling me it was considered a "courtesy move". I went to my mental health provider Ms. Green and also to her supervisor Lt. Coen and with the exception of mental health was told to "deal with it" "become a female then" "grow tougher skin" My personal things would be stolen, moved around, trash would be thrown on top of my bed and swept under my bed. Pictures of me

4-E

## D. Statement of claim(s)—Claim one cont.

with a penis and female breasts would be drawn and taped to my wall. When reporting this the staff just gave me a small trash bag to use to solve the issue of me being able to utilize the room's trash can.

5. A.R. #700-14- states that staff will consider various factors, but not limited to: health and safety of the transgender offender, to include but not limited to; cell and/or unit assignments. Transgender offenders will be housed in the least restrictive environment, while providing safety, security, and meeting the individual's medical and mental health needs. A transgender's own views with respect to their own safety shall be given serious consideration. A transgender offender can notify living unit staff of any issues verbally or in writing. Every time I mentioned this A.R. Lt. Ziggerelli and Cpt. Cordova said there's "loop holes" to this A.R. and the housing accommodations.

6. 4 of the core areas entitled to the protection pursuant to the 8th Amendment include amongst the other basic necessities of life #1.) Sanitation (including personal hygiene) #2.) Personal safety (see Zollicoffer v. Livingston, 169 F. Supp. 3d 687, 696. On 3-3-24 I started grievance for razors due to my hormone therapy (HRT) that I have facial hair that is so coarse that the electric razors provided hurt and break my face and neck out and was denied, 1-29-24 I started a grievance on statements and personal safety on Cpt. Salbato, on 3-2-24 I started a grievance on my room conditions and personal safety, on 3-31-24, 4-18-24, and 9-8-24 I started grievances on C/O Alfaro for code of conduct and personal safety. 5-14-24 started grievances on the TG offenders and how we are treated by medical and mental health. 1-29-24, 4-24-24, and 4-24-24 started grievances on medical for my personal safety and on 9-8-24 I started multiple grievances on Cpt. Cordova and multiple other staff named above due to my personal safety.

7. Though I am forced through (state sanctioned punishment") incarceration to surrender many of my "privacy rights" and in spite of the fact much of prison life is communal, I shouldn't have to be forced to be housed in the same cell with multiple inmates who are female and disagree with

4-F

**D. Statement of claim(s)—Claim one cont.**

my life style and was sexually harassed and threatened for months. Starting in January 2024 through March of 2024.  I retain an absolute constitutionally established and guaranteed right to be "secure in my person" and not have the punishment inflicted upon me be "cruel and unusual" even in the confines of La Vista Correctional Facility.

8. On more than One occasion I personally verbalized to defendants Warden Werlich, A.W. Sam Spangler, Cpt. Salbato, Cpt. Cordova, Major Gold, Lt. Ziggerelli, Lt. Ortiz, Lt. Murphy, Lt. Racine, MH Provider Green, MH Lt. Coen, C/O Alfaro, about my fears and concerns about me being sexually harassed and possibly sexually assaulted and therefore at "**risk**" of harm, both physically and psychological was and continues to be extremely **obvious** in light of the fact that I am actively transitioning from being anatomically female to male and in fact, due to extensive hormone replacement therapy (HRT) fully developed male features. On 3-18-24, Warden Werlich stated he wasn't going to "play games" with me and I would be housed with whomever his staff decided and I should either have "thicker skin" or "become a real female like I was born to be". On 2-8-24, Cpt. Cordova told Lt. Ziggerelli to inform me I was going to soon find out what it feels like to have the housing captain "wash her hands of me". Due to the conversation I had with my mental health provider Ms. Green on my treatment in L.V.C.F. and told to stop talking about my treatment to other staff.

9. Said defendants responses to my concerns, fears, and repeated reports of sexual harassment and retaliation was A.) They were aware of the ongoing problems. B.) that if I quit HRT I would have an easier time adjusting to that facility. C.) that LVCF didn't have to adhere fully and completely to A.R. 700-14 that there's always "loopholes" around things. D.) that they couldn't offer me any immediate solutions to my problems. E.) that this facility has passed all PREA audits and my housing would solve itself. Even though every incident reported to housing staff and there has been no less than 10 grievances filed in a year's time frame along with documentation of dates and times of the sexual harassment and threats. The LVCF staff and administrators had the, "**requisite knowledge**" of the dangers I faced on a daily basis, **specifically the sexual dangers**. Starting

4-G

### D. Statement of claim(s)—Claim one cont.

approximately august of 2023 through September of 2024. The abuse only stopping with the transfer back to DWCF.

10. Based on the fact that no meaningful, effective, or protective measures have been instituted by the CDOC or LVCF administrators, the defendants, including but not limited to, (executive director) Moses Andre Stancil and LVCF warden Tom Werlich have clearly demonstrated their collective **"deliberately indifferent"** state of mind towards me by **ignoring** the mandates of **C.F.R. 115.42(E), the CDOC PREA A.R. 100-40 and 700-14** which governs the **"management of offenders with gender dysphoria"**, all of which clearly establish as a matter of **"policy"** (congressional and otherwise), that, **"a transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration."**

11. The defendants **"knowing and willful"** decision to ignore the mandates of C.F.R. 115.42(E) and CDOC'S written policies regarding my personal safety concerns and their continued **failure to protect** my privacy and security rights which I retain in spite of my incarceration status is tantamount to the "wanton and unnecessary" infliction of cruel and unusual punishment which is prohibited by the 8th amendment of the U.S. Constitution; especially in light of the fact that I am a transgender male in an all-female population.

12. According to the 8th Amend. And the equal protection clause I shouldn't be discriminated against at work due to my sexual orientation or gender identity. On 2-14-24 Cpt. Cordova would call unit 1 C/O Bishop and ask why and how long I was working in that unit and to watch me so I didn't go "rape" her female residents. C/O Bishop told my boss Sgt. Pacheco to inform me of this and to have me leave the unit if I needed to go to the bathroom and to also stay on camera so the captain couldn't try to "hit me with any serious accusations." Sgt. Pacheco stated I'm experiencing full harassment. On 2-20-24 Cpt. Cordova stated if any of her female residents were to say that I raped or assaulted them that she would listen to that "hearsay". On 2-23-24 I spoke to Mental Health Lt. Coen about all sexual discrimination and provided copies of documentation kept on all living

4-H

## D. Statement of claim(s)—Claim one cont.

and working conditions.

**Issue 3-** The Supreme Court has held that the 8th Amend. Obligates the government to provide medical care for those whom it punishes by incarceration: "An inmate must rely on prison authorities to treat medical needs; if the authorities fail to do so, those needs will not be met." Estelle, 429 U.S. at 102-04 this obligation also extends to the provision of adequate treatment for mental health illness. Prison officials violated the 8th Amend. When they acted deliberately indifferent to my serious medical needs because I am a transgender male.

**Supporting Facts-** According to C.F.R. 115.42(G) Prison Rape Elimination Act of 2003. The agency in this case, (The Colorado Department of Corrections) is responsible to prevent, detect, and respond to any kind of unwanted sexual abuse, assault, or harassment. In this case, the unwanted comments and unequal treatment due to gender identity. Also, violating own policy A.R. #700-14 (section 4 #B)-Unprofessional and derogatory references towards offenders is not allowed under any circumstance. And A.R. #700-01 medical scope of services.

1. I have been told by nurses, the HSA (Sarah Berger), and my own provider (Tameika Pillsbury) that taking HRT is "against the bible" and "God" and that if I have an adverse reaction to it they won't help me.

2. Approximately January of 2024 I had surgery on my hand and due to the staff not changing my bandages I developed "cellulitis." 1-25-24 I tried to call an emergency and was denied. On 1-26-24 I was taken to the E.R. where the hospital said if I would've waited 8 more hours I would've went "septic" I was put on antibiotics and pain killers. The doctor put instructions for LVCF medical staff to do a follow-up and see me on 1-28-24. On that date I was not on the medical list. On 1-29-24 I was still not on the list and C/O Bishop and Sgt. Pacheco called medical and I had to call an emergency but C/O Frisbee said they were too busy to see me. Same day I had to have my mother Mashelle Adamson get ahold of headquarters about this neglect. On 1-30-24 I was seen by medical.

4-I

## D. Statement of claim(s)—Claim one cont.

My provider Tameika Pillsbury refused to see me so the other provider Felicia did the follow- up and said that my trip to the E.R. was never even submitted into my electronic file. I started my grievance process on that said date.

3. The nursing staff and Tamieka Pillsbury are vocal about not wanting to be the one to administer my injection of testosterone and on 4-10-24 I started my grievance process for missing/skipping my doses for the 6th time which equals months of late injections. They will intentionally jab the needle into my buttocks/hip area hard and painful and vocalize how its "disgusting" that they have to "see my ass" every other week. The 8th Amend. Holds the objective prong in a medical care case can be satisfied in 2 ways. One way is "a plaintiff can show that the medical need is one that puts him at substantial risk of serious future harm.

4. On 4-23-24 Nurse Mya Taylor being neglectful and refusing my medications after going through another surgery and she also falsely signed off that she distributed those same medications. Under the 2nd test of the objective prong, the question is not limited to whether the plaintiff's symptoms render a medical need sufficiently serious. I had cellulitis in a previous surgery of the same nature and was being denied the medication the hospital prescribed me, not only was I denied all day but in the process I was degraded and belittled by the nurse Mya Taylor in front of other inmates and staff. See Oxedine; 241 F.3d at 1272.

5. On 1-29-24 started grievance process on Tameika Pillsbury and C/O Frisbee for not only denying my medical appointment but as I walked up they were saying derogatory and defamatory comments about my gender identity in front of other nurses and inmates. My medical needs were consistently neglected due to provider's biased opinion of me because of gender identity.

## Claim Two

**Claim Two:** Violation of the 14th U.S. Constitutional Amendment's Guarantee of "Due Process

4-J

## D. Statement of claim(s)—Claim two cont.

and Equal Protection of the Laws."

**Supporting Facts:** The 14th Amend. Guarantees that "all persons in the U.S." shall have and enjoy the right of "due process and equal protection" regardless of ethnicity, religious affiliation, or gender identification. As in inmate of the CDOC who is a transgender male in a female population, I have suffered and endured numerous incidents of sexual harassment which in essence resulted in being psychologically sexually assaulted while staff and inmates kept saying derogatory comments, male staff touching themselves in front of me, and being threatened of retaliation if I spoke up about it. Though I have reported and documented each incident of abuse I have been denied my constitutionally guaranteed right to "due process and equal protection" in the following ways;

1. After the blatant violations of my privacy and security rights by offenders Broyles-Thomas and D. Riddle and the repeated reports of sexual harassment of LVCF staff, it became clear and evident to all said defendants that no consequences would be established or enforced so the sexual harassment became more aggressive and frequent. See Shaw v. Dist. Of Columbia, 944 F. Supp. 2d 43 (D.D.C. 2013).

2. Equal protection means that a person cannot treat some prisoners differently than others without a reason. How good a reason the prison needs varies depending on what kind of discrimination is at issue. Being a transgender male is not a good enough reason. LVCF verbally and physically sexually assaulted me. In Hughes v. Farris, 809 F.3d 330 (7th Cir. 2015) "the equal protection clause protects against both sexual harassment by a state actor under color of state law and discrimination on the basis of sexual orientation." ID. At 334.

3. Not only do women have a significant lower population than men and tend to get overlooked, the transgender population will be significantly lower than women. Being in a female facility I would constantly be treated as if my needs were "less than" a "cis-female". My medical needs,

4-K

**D. Statement of claim(s)—Claim two cont.**

programming, housing, and hygiene needs were pushed to the side considering them a "non-priority" issue. See Romer v. Evans, 517 U.S. 620 (1996).

4. Approx. May 2023, I was hired on the Canine program at LVCF. When being introduced to the boss Trina Dowd she became agitated and was transparent with her disinterest of a "boy/girl" being on her team. After finding out I was actually considered transgender she told me she would never call me a "him" and that "all this gay mess wouldn't be tolerated".

5. Approx. October of 2023, Cpt. Salbato and Trina Dowd had a meeting with me in regards to my gender identification and when I stated that that had nothing to do with my job requirements and that I would be respectfully stopping the interview and starting my grievance process. Trina Dowd stated, "If you grieve this Captain I will not only back him but I will immediately release you from your position." When I submitted the grievance I was later removed from my position.

On 12-21-23, Trina Dowd stated it was "on paper" and "in my file" that it would be due to my "behavior" but she "warned me about the grievances". I never did receive any disciplinary infractions and per A.R. 150-01, I was to be re-stored all housing and programs lost. I was denied all of the above. Which affected my "incentive pay" and accreditations I need for a potential career path.

6. On 6-27-24, I filed a grievance for a steady "campaign of harassment" due to the retaliation since arriving at LVCF in 2021 just for being transgender and for following my rights to the grievance process. LVCF violated not only my 1st and 14th Amend. But also their own policy under A.R. 1450-01 Code of Conduct. Allowing me to be free from retaliation based on filing a grievance against any staff member. The LVCF staff as a whole but with "direct orders" given by both Cpt. Cordova and Cpt. Salbato, the actions of retaliation, sexual discrimination, and sexual harassment were indeed so "adverse" that it affected my mental health is a severe and damaging manner. There was a "known and deliberate" "causal connection" to not just the grievances filed

4-L

## D. Statement of claim(s)—Claim two cont.

but the PREA reports made and based by the fact that I am transgender.

7. Approx. May of 2024, I was afforded the cosmetology program. Lt. Murphy informed me that they had a meeting about me and it was agreed that I stop my grievances towards the facility or choose to not be included in the cosmetology program. He told me that I needed to make a decision and I choose to not stop my grievance process. LVCF violated my 1st and 14th Amend. Rights but as well as own policy A.R. # 1450-01 and 850-04. I shouldn't have to choose either grievances or programs.

8. In August of 2024, I was given the "second chance pell" program with Trinidad State. After orientation Cpt. Cordova said she didn't want a "transgender representing her facility" I said that this program had nothing to do with the facility so she had no say in this one. Her response was, "there's always loop-holes to everything in prison." Cpt. Cordova's adverse actions warrant an equal protection claim.

9. On 8-22-24, I was taken to segregation with alleged "threats" to staff. While in segregation on 8-27-24, Cpt. Cordova came up to speak to me and reminded me that she told me there was "loop-holes" and because it was threats towards an educational staff member that warranted my removal from Trinidad State. She then said she wasn't paid to "babysit" her staff in regards to the PREA reports made on C/O Floyd and that "all my grievances give her a headache". Before leaving she said, "If you felt uncomfortable in population before you will definitely feel uncomfortable returning."

10. On 9-3-24, I had my C.O.P.D. hearing for the threats and footage showed I was nowhere near staff when she said I threatened her with my body language and report was found to be in error. The hearings officer stated that Cpt. Cordova wanted me found guilty for that specific write-up and that his hands were tied and I needed to appeal the decision immediately before finding me guilty. This is clear and obvious and deliberately indifferent to my success in this facility and in life in

4-M

## D. Statement of claim(s)—Claim two cont.

general. This is retaliation based on gender identity and the PREA reports made on C/O Floyd in July of 2024.

11. From approx. 9-3-24 until my transfer back to DWCF I called the designated "PREA Hotline" on a daily basis with no response for weeks. I repeatedly asked for protective custody and was ignored. (Johnson v.Johnson). I finally had family email the executive director Moses Andre Stancil and reported the sexual abuse and retaliation. I was later interviewed and placed in protective custody. I was given less than "allowable" that the inmates receive when placed on segregation status. Cpt. Cordova stated, "Adamson will get what I allow her to get." And I was left with little to no hygiene or change of clothes for several days until the director again was notified and had to force Cpt. Cordova to bring me my property.

4-N

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  ___ Yes  _X_  No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                N/A

Docket number and court:             N/A

Claims raised:                              N/A

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)     N/A

Reasons for dismissal, if dismissed:              N/A

Result on appeal, if appealed:                     N/A

## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

    _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

    _X_ Yes ___ No (*check one*)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

### Injunctive Relief:

For the willful, intentional, and negligent failure of the CDOC and the La Vista Correctional Facility administrations to provide a safe(r) living environment for the transgender prisoners, **Plaintiff** seeks mandatory (permanent) **injunctive relief** in the following forms:

A.) The issuance of an order mandating transgender males actively on H.R.T. be given proper hygiene needs. (Orange razors) to be maintained and checked in and out by housing staff with offender's identification card. To be able to purchase them through canteen or through the housing captain by use of misc. withdrawal slip. Approved offenders will be held responsible for the use and maintenance and be subject to C.O.P.D. charges. Complying with A.R. 150-01 and 700-14.

### (See Attached Pages)

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

__3·31·26_____
(Date)

(Revised November 2022)

## G. Request for Relief cont.

B.) The issuance of an **order** mandating the transgender males be afforded the option of LVCF's "2-man" cell with any offender who has verbally and/or written authorization on "cell acceptance" form given consent to live with a transgender male actively in the process of any gender conforming therapy. Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

C.) The issuance of an **order** mandating the transgender males be afforded to have secure showering times available to them without any female offenders to be able to walk in and out of the bathroom. i.e. count times and/or appropriate times that LVCF to offer. Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

D.) The issuance of an **order** mandating the transgender males to be afforded the same programming needs as the female population. i.e. G.E.D. classes, T.S.U. courses, cosmetology class, maintenance jobs, outside work crews, and any other program/job assignments available to the LVCF population. Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

E.) The issuance of an **order** mandating the transgender males to have mandatory mental health group and/or individual therapy provided while offender is actively taking H.R.T. to provide a safer transition for offender. Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

F.) The issuance of an **order** mandating that when a transgender male reports to any staff member of any sexual harassment, discrimination, abuse, or assault has or is at risk of taking place that an immediate action be taken. To give a more "serious consideration." Of the inmates safety or risk of safety. Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

6 - A

## G. Request for Relief cont.

G.) The issuance of an **order** mandating the permanent placement of a gender dysphoria medical provider for the LVCF medical team and to be the permanent medical provider for the transgender males. Complying with A.R. 700-14

H.) The issuance of an **order** mandating the transgender males' H.R.T. to be taken more serious. Strict scheduling for injection days whether it be weekly or bi-weekly basis and strict scheduling for "labs" to be checked every 3-6 months to check the offender's testosterone levels. Complying with A.R. 700-14.

I.) The issuance of an **order** mandating more in depth training for the LVCF staff based on the transgender male population and the proper protocol for the reporting of "PREA." Complying with A.R. 700-14 and pursuant to C.F.R. 115.42 The Prison Rape Elimination Act of 2003.

## This request for injunctive relief is reasonable with minimal cost to the CDOC.

## Compensatory Damages:

For the willful, knowing, and reckless disregard of my (civil and human) rights by defendant(s) Werlich, Spangler, Gold, Cordova, Salbato, Ziggerelli, Ortiz, Murphy, Dowd, Santistevan, Miramontez, Coen, Racine, Alfaro, and Bradburn who, after being fully informed about the mental abuse that I was subjected to and suffering by being aggressively sexually harassed while residing at LVCF. (Which were reported and grieved by the fullest extent of the CDOC grievance process.) And who did absolutely nothing to address and/or modify conditions in order to prevent any further abuse. Plaintiff seeks compensatory damages in the total of Eight Hundred and Twenty-Five Thousand ($825,000.00) dollars. ($25,000.00 for each month plaintiff resided at LVCF and endured constant sexual harassment and discrimination.)

For the negligent failure of defendants Cordova, Ziggerelli, Ortiz, Santistevan, Miramontez, Coen, Racine, and Bradburn to properly report my PREA claims and investigate my reported complaints

6 - B

## G. Request for Relief cont.

of sexual harassment and sexual abuse from C/O Floyd and willfully, knowingly, and neglectful placement around C.O Floyd after reporting his sexual aggressive nature towards me resulting in him sexually abusing me in a closet. . Plaintiff seeks compensatory damages in the total of Two Hundred and Fifty Thousand ($250,000.00) dollars.

For the willful, intentional, and negligent actions of retaliation for reporting the sexual abuse and the reckless disregard of my safety from defendant C/O Floyd and including but not limited to mental abuse, post-traumatic stress from his abuse and the physical injury caused when pushing off of him with my hand I just had surgery on. . Plaintiff seeks compensatory damages in the total of Two Hundred and Fifty Thousand ($250,000.00) dollars.

For the willful, knowing, and reckless disregard of my civil and human rights by defendants Berger, Pillsbury, and Taylor, who after being informed of medical needs disregarded not just the E.R. visit but on a consistent basis disregarded my medical needs based on the fact I was a transgender male which caused physical and mental injury after negligence of surgeries and lack of hormones to my person. . Plaintiff seeks compensatory damages in the total of Two Hundred and Fifty Thousand ($250,000.00) dollars.

Plaintiff seeks compensatory damages in a complete total of One Million Five Hundred Seventy Five Thousand ($1,575,000.00) Dollars.

## Punitive Damages:

For the willful, knowing, and reckless decisions of all named defendants which has directly resulted in the unnecessary degradation to my quality of life in these prison living conditions and contributed to my unnecessary suffering in conditions of confinement where due to my sexual orientation the dangers to my personal safety is dramatically increased and the environment is mentally abusive because of constant sexual harassment that I was forced to endure on a daily

6 - C

**G. Request for Relief cont.**

basis and even more aggressive in sexual nature after utilizing grievance process. . Plaintiff seeks <u>punitive damages</u> in the total of <u>Four Hundred and Twenty-Five Thousand ($425,000.00) dollars;</u> Totaling all Monetary Damages in the amount of <u>Two Million ($2,000,000.00) Dollars.</u>

6-D